IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| DAVID WAYNE KOCUREK, § | CASE NO. 04-60462-V2-7 | |
|     Debtor § | | |
| ———————————————— § | | |
| § | | |
| LACKS STORES, INC., § | | |
|     Plaintiff § | | |
| § | | |
| vs. § | ADVERSARY NO. 05-6002 | |
| § | | |
| DAVID WAYNE KOCUREK, § | | |
|     Defendant § | | |

**MEMORANDUM OPINION IN SUPPORT OF ORDER
DENYING DISCHARGE OF DEBT UNDER SECTION 523 AND
DENYING OBJECTION DISCHARGE UNDER SECTION 727**

    Lack's Stores, Inc. ("Lacks")[1] objected to discharge of the Debtor's debt to Lacks and also objected to the Debtor receiving any chapter 7 discharge at all. For the reasons set forth below, the Court denies discharge under section 523 of part of the debt owed to Lacks and denies Lacks objection to discharge under section 727.

FACTS

    Prior to filing bankruptcy, the Debtor purchased goods and executed three security agreements/retail installment contracts with Lacks.[2] About three months before filing bankruptcy, the Debtor defaulted on the contracts. At the creditors' meeting, the Debtor stated that he had sold some of the collateral (the air conditioner units) to an unknown individual but he apparently still had possession of the mattress and the television. The Debtor admits that he knew that Lacks had a security interest in the air conditioners.[3] However, the Debtor contends that the sales were

---

[1] In the complaint, the plaintiff's name is spelled three ways: "Lacks" (caption), "Lack's" (introductory paragraph) and "Lacks'" (footer). This opinion will use "Lacks."

[2] The Debtor concedes that Lacks held a security interest in the goods.

[3] Pretrial Order, page 4 (doc # 10, adversary proceeding 05-6002)

of "financial necessity, and were not intended to harm Lacks security interests."[4]

The Debtor filed for relief under chapter 7 of the Bankruptcy Code on October 5, 2004. On November 23, 2004, the chapter 7 trustee filed his report of no distribution which states that the Debtor appeared at the meeting of creditors and that the trustee has determined that there are no assets to administer for the benefit of creditors of the estate. In January, 2005, Lacks filed two adversary proceedings against the Debtor (adversary proceeding nos. 05-6002 and 05-6003). At the pre-trial conference on March 22, 2005, the Court recognized that the two adversaries involved the same two parties and the same transactions. The only difference between the adversary proceedings is that one, 05-6002, is a complaint to determine dischargeability of a debt under section 523 and the other was a complaint to deny discharge under section 727. Consequently, the Court consolidated the two adversaries proceedings into case number 05-6002. A trial was held on April 19, 2005.

## JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b). By Order dated August 9, 1984, superceded by General Order 2005-6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. §§ 157(b)(2)(I) and (J). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). No party has objected to the exercise of core jurisdiction by the undersigned bankruptcy judge.

## ANALYSIS

Lacks argues that its debt should be deemed non-dischargeable and/or that the Debtor should be denied discharge due to the Debtor's violation of security agreements and false statements made under oath at the creditors' meeting and in the filed schedules and statement of financial affairs.

*Denial of discharge of a debt under section 523*

A debt is nondischargeable under section 523(a)(6) if the debt arises from willful and malicious injury to another entity or the property of another entity.[5] The creditor has the "burden

---

[4] *Id.*

[5] 11 U.S.C. § 523(a)(6) (requiring "willful and malicious injury by the debtor to another entity or to the property of another entity").

of proving, by a preponderance of the evidence, that its debt should be excepted from discharge."[6]

The United States Supreme Court held in *Kawaauhau v. Geiger* that nondischargability under 11 U.S.C. § 523(a)(6) requires, "that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[7]

Months after *Geiger* was decided, the Fifth Circuit in *Miller* held that a creditor must prove "objective substantial certainty or subjective motive" to injure another entity or its property.[8]

In the case at bar, the creditor did not prove, by a preponderance of the evidence, that the Debtor was motivated by the desire to cause harm. But the Court concludes that the Debtor was sufficiently reckless, which is sufficient to meet the alternative *Miller* test. By selling the air conditioners to an unknown party for a price roughly half of the purchase price and making no effort to deliver the sales proceeds to the Lacks, there is ample evidence of an action with objective substantial certainty to cause harm.

In addition to requiring a "willful" act by the debtor, 11 U.S.C. § 523(a)(6) also requires that the debtor act with malice.[9] Previous jurisprudence assumed that since Congress used two words, they were not synonymous. However, the Fifth Circuit (*Miller*) interpreting *Geiger*, holds that the analysis of "willful and malicious" is now a unitary concept[10] tested by the same word formula. The Debtor's act is willful and malicious if " . . . there is either an objective certainty of harm or a subjective motive to cause harm."[11] Since the Court has found that there was an objective substantial certainty to cause harm, under the *Miller* analysis the act was both willful and malicious.

There is no evidence that the Debtor sold the twin mattressess or the Toshiba 32-inch stereo television that were purchased between February 2003 and June 2004. The willful and malicious injury that the Debtor caused by selling the air conditioners is Lack's inability to

---

[6] *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 452 (Bankr. N.D. Ind. 2001); *See also Grogan v. Garner*, 498 U.S. 279, 286-88 (1991).

[7] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis original).

[8] *Miller vs. J.D. Abrams, Inc. (In re Miller)* 156 F.3d 598, 606 (5th Cir., 1998).

[9] 11 U.S.C. § 523(a)(6) (requiring "willful and malicious injury by the debtor to another entity or to the property of another entity").

[10] *Miller*, 156 F.3d at 606.

[11] *Miller* at 606.

exercise its security rights in two air conditioners that had been purchased for $360.00. There was no proven willful and malicious injury proven with respect to the remaining debt. Lacks introduced no evidence of the value of the air conditioner collateral at the time of the sale. The only evidence in the record is the sale price: $140.00. Therefore the Court concludes that the injury caused by the willful and malicious misconduct alleged by Lacks (the improper sale of the collateral) is $140.00 and that debt is nondischargeable.

*Denial of discharge under section 727*

Lacks alleges that the Debtor's discharge should be denied under section 727(a)(2): "the debtor with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... property of the estate, within one year before the date of filing of the petition; ...." In addition, Lacks alleges that the Debtor should be denied a discharge under section 727(a)(4): "the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account." Finally, Lacks alleges that the Debtor should be denied a discharge under § 727(a)(5) because the Debtor allegedly "has failed to explain satisfactorily ..., any loss of assets or deficiency of assets to meet the debtor's liabilities." The creditor bears the burden of establishing that discharge should be denied.[12]

Section 727(a)(2)

To establish, under § 727(a)(2), that discharge should be denied, Lacks must show the following: "(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate."[13] The first three requirements of this test have not been disputed by the Debtor or Lacks. However, the Debtor contends that he did not intend to hinder, delay or defraud Lacks when he sold the air conditioning units. Rather, the Debtor contends that the sales were of "financial necessity"[14]. In *In re Chastant*, the Fifth Circuit court listed factors that show actual intent to defraud:

> "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after

---

[12] *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177 (5th Cir. 1992).

[13] *Pratt v. Cadle Co. (In re Pratt)*, — F.3d —, 2005 WL 1313802 (5th Cir., June 3, 2005) *citing Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

[14] Pretrial order, page 4, paragraph 3.1 (doc # 10).

the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry."[15]

Applying these tests, the Court concludes that the Debtor did not intend to hinder, to defraud, or to delay Lacks. First, Lacks has not provided any evidence that the consideration received was substantially inadequate. In new condition, with a warranty, on the dealer's showroom, the units were worth $344.95 about two or three months before they were sold. The sales price was $140.00. Lacks has offered no evidence that used units, without dealer delivery and warranty, were worth more. Second, there is no known relationship between the Debtor and the purchaser. Third, the Debtor retained no rights or benefits in the collateral. Fourth, the Debtor was apparently in difficult financial straits, and all indications are that the Debtor intended to get cash, not to injure Lacks. Fifth and sixth, the Debtor did *not* sell the mattress and television, which are apparently the greatest valued collateral. Therefore, there does not appear to be a pattern of misbehavior.

Earlier in the opinion, the Court concluded that the "subjective intent to harm" element of § 523 (a)(6) was not met. Consistent with that earlier conclusion, the Court here finds that Lacks has not proved *intent* to hinder, harm, or delay.

Section 727(a)(4)

Lacks asserts that the Debtor knowingly made false statements under oath which would justify denial of discharge under § 727(a)(4). The Fifth Circuit held that a creditor must show that "(1) [the debtor] made a statement under oath; (2) the statement was false; (3) [the debtor] knew that the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case."[16] The requisite false statements or omissions can be found in the schedules or made by the debtor at the creditors' meeting.[17] The alleged false statements or omissions in this matter include the Debtor listing Lacks as an unsecured credit card debt, even though the Debtor testified at the creditors' meeting that Lacks was secured, failing to list Lacks as a secured creditor and failing to list the sale of the two air conditioning units on item 10 of the Statement of Financial Affairs. The parties acknowledge that at the time of the bankruptcy filing, the Debtor's account balance with Lacks was $1,522.42.[18]

---

[15] *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989) *quoting In re Schmidt*, 71 B.R. 587, 590 (Bankr.D.Minn. 1987).

[16] *Beaubouef*, 966 F.2d at 178.

[17] *Collier*, ¶ 727.04[1][c] at 727-42.

[18] Pretrial order, page 4, paragraph 2.8 (doc # 10).

This amount represents approximately five percent of the Debtor's total liabilities.[19]  Although not a majority of the liabilities, the amount is not immaterial.

The Court finds that the first two tests are met.  However, the Court finds that Lacks has failed to proved, by a preponderance of the evidence, that the other tests are met.  The Debtor is not sophisticated in financial matters.  Since Lacks was paid monthly (like a credit card account) the erroneous listing could as easily be attributed to error or ignorance as intent to deceive.  In fact, since the Lacks' debt was listed and Lacks was put on notice of the bankruptcy case to assert all of its rights, it is difficult to imagine how anyone could intend to deceive by that incorrect listing.  The Court does not believe that Lacks has proved, by a preponderance of the evidence, that the Debtor knew (when the statement was made) that the statement was false or that the Debtor intended to deceive.

But most important, the alleged false statements had no effect on this bankruptcy case.  Lacks has lost no right and the trustee has voiced no objection on behalf of other creditors.  The results of the case are exactly the same as they would have been if the errors had not been made.

Section 727(a)(5)

To deny discharge under § 727(a)(5) Lacks must show that the Debtor failed to explain a loss or deficiency of assets.  While the Court has concluded that the sale of air conditioning units was wrongful, it is not unexplained.  Proper remedy has been provided, denial of dischargeability of the debt for damages caused by sale of the collateral.

## CONCLUSION

For the reasons stated above and by separate judgment issued this date, discharge of the debt owed to Lacks by the Debtor for damages caused by sale of the air conditioners ($140.00) is denied under § 523(a)(6) and that Lacks objections to discharge are denied.

SIGNED July 21, 2005

*Wesley W. Steen*

_____

WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE

---

[19] The Debtor's summary of schedules (doc # 7) lists total liabilities of $21,509.00, with $7,400 as secured claims and $14,109 as unsecured claims.